Case number 23-1007, Gemi Spaulding, et al, Petitioners v. Merrick B. Garland, Attorney General, et al. Mr. Flannery for the Petitioners, Ms. Gay for the Respondents. Mr. Flannery? Yes, ma'am. Good morning. Good morning. I think you're warm today. May it please the court. My name is John Flannery and it's my privilege to represent these chronic pain patients. The standard by which we measure a civilization is how we treat our own. And by that standard, we have done a miserable job, not just in this case, but pain cases generally. We don't do anything to deal with the incalculable suffering that is foisted upon people indeed by the careless acts, such as the one in this one with Dr. Bokhoff, by which they suspended his license. They did it based on what a doctor, a hired gun had said, who had been found not to be credible in an Ohio federal case. They did it based on extrapolating from five patients who basically didn't have any serious charge about their treatment until the government was involved. The DEA, by the administrator, suspended the license of Dr. Bokhoff, forcing him to abandon his patients on the spot, even though abandonment is sanctioned in every state. The DEA did this. There was nothing the doctor could do about it. There was no notice or opportunity to be heard by the patients. And as a result, they were cast off to deal with things as they may. If I can ask you about finality here. Yes. So this court has jurisdiction under section 877, only a final decisions of, you know, of the administrator who's delegated the attorney general's authority. And our court has said that that finality requirement is jurisdictional in the Doe case. So I'm wondering why would an ALJ decision be a final action of the administrator in this context? Final decision, excluding a party, excuse me, excluding a person of article three judicial review. And that is the distinction that 5 U.S.C. 555B entitles a person to apply as an interested person. A doctor who denies to a patient the ability to have a prescription, casting them into a life of suffering and perhaps suicide is exactly the case that comes before 5 U.S.C. 555B. So it may well be it's reviewable, but there's not been a final decision of the administrator. Well, so why wouldn't the interveners have to seek such a decision from the administrator, either as an interlocutory matter or, you know, on the merits with the rest of the decision? Well, there are a couple of interesting points about that. The 877 does say all final determinations, findings, and conclusions of the AG under this title shall be final and conclusive decisions to the matter involved, except that any person aggrieved by a final decision of the AG may obtain review of the decision in the U.S. Court of Appeals. Now, when we look at 555B, we see that it makes a couple of provisions. I get the statute in front of me, so I'm not doing it based on my memory. The, it grants persons a point of access to the court system with something less than Article III standing. In other words, it's not considered standing. My question is not about standing. It's about finality. Well, then you have to reconcile it with 5 U.S.C. 704, which says agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. That directly runs contrary to your concern. And it talks about in 704, something that is otherwise final and nothing remains to be done in this case. So there is something that can be done. The regulations, the DEA regulations provide that you can get an interlocutory appeal to the administrator. So, so, so the intervenors here could have gone and, and said, you know, we were denied intervention. We're seeking an interlocutory review by the administrator. And if the administrator denied that or refused to hear it, then perhaps there would be final. Judge Rowe, I'm Judge Rowe, excuse me. I was putting you in the point of the ALJ, excuse me. Judge Rowe, the, um, the thing we overlook here is, and I made something that may not be funny that we rely on the, rely on strangers in this sense. We had no access to any of these records. We had no access to what is the court's final decision, the ALJ's final decision. In fact, the, the, the service of that decision specifically excludes us. It includes only the government. It includes the two lawyers who are representing Dr. Bokoff. They do not include any intervenor. We would have to divine what the ALJ was doing in its secret proceedings to know what that decision was to appeal it in any way. Also in the statute, it makes provision under 50C555 that any consideration of these matters should be prompt. This goes from, we filed our motion to intervene in November 22. We find out through the grapevine, the strangers who would let us know about it, that the court made a decision on May 2nd, 2023. From 2023 until today, there has, as best I can tell, I have no idea what the administrator, I have no idea if anybody else appealed it. I can't agree or disagree. I can't join the suit. I have no way to participate in this sealed proceeding. And so I say there's no other adequate, excuse me, Your Honor. But you did take an appeal. And I think the question is, if you could take an appeal to this court in order to ensure that you have a final decision of the administrator, who is the attorney general's delegate in this matter, why wouldn't you, once you did obtain notice by fortuity, why isn't your step in order to finalize the agency decision to, I mean, the regulations and the statute are available to you. Those are not kept from you. Why, why, why isn't that step in order to get a final agency determination that you go, as Judge Rao has mentioned, on an interlocutory basis? I suspect that there are many secret DEA proceedings where precisely the disregard for pain patients occurs and no one can do anything about it. But we're talking about this proceeding. Well, in this particular proceeding. Whether we have jurisdiction, because whether we're sympathetic or not with your clients, we can only rule on something where we have jurisdiction. The terms are that this court would endorse a proceeding in which you guess what's going on, you've been deprived to participate and file an appeal without knowing what it's about in the normal case, and then waiting upon the administrator while in this case, patients are suffering day by day. That's not a remedy. That, that, that's not law. That's not a process. That's, well, I believe it is, Your Honor, because 5 USC 704 has to be reconciled, no other adequate remedy. And it says otherwise final. It is otherwise final. That decision denying intervention by my pain patients was otherwise final. Can you explain the basis for article three standing of your clients to come to this court? We don't have article three standing. That's the whole point. We have 5 USC 555, the right to intervene if you're an interested person and being denied treatment and medicine that is necessary to your wellbeing seems to me to be a sufficient interest. No other party in this case could represent my clients. We were flying in the dark to try to find this out. If anything, it's a fundamental denial of due process or, or fair play. And that it seems to me is no other adequate remedy. What are we taught from the first year legal method about how we present an argument, we look at the case, we look at the authorities forbidden to us. We're not, we weren't entitled to see it. We weren't entitled to see anything in the record. We weren't entitled to the search warrant that showed that they had doubts about this going forward. We weren't entitled to the list of when they were going to have hearings. We weren't entitled to any of those things. All of them were ignored. And between the denial of our intervention and the courts excuse me, the ALG final decision, they contradict each other. And I take it that that you are not privy to the information that is relied on to proceed against Dr. Bacoff. That's confidential. No, it wasn't in a limited sense. One, I had access to the search warrant, which required me to do some gumshoe work, like I was a recovering federal prosecutor again. Two, I managed to get the subpoena that they issued. Three, when they outlined what it would be about, there was a set forth of what Judge Dr. Munzig had said, which has been balanced in an Ohio court. And so I had this. And I talked to each of the five who are named in the order to show cause. And they explained to me, and I made it part of our papers in the court before the ALG, that each of them was frivolous and that because these are patients such that they're unable to actually sustain themselves unless they have this medication, the court didn't care. And the court cited, for the wrong reasons, different things, including it said that, well, if you have any problem without having a doctor, well, that's too bad. Maybe I could save a minute. We'll give you a minute and reply. Thank you. I appreciate it. Thanks, Gabe. Thank you for your time. Thank you. Morning. May it please the court, Anita Gay on behalf of the respondents. The petition, the petition should be denied for three reasons. As Judge Rao pointed out, there is no jurisdiction under 21 USC 877 or 5 USC 704 in that this is not a final order. The order of the administrative law judge in the Dr. Bokhoff proceeding, the correct and most efficient way petitioners, if they had wanted to seek review of that, would have been to press for review under 21 CFR 1316.62, which provides for the ALJ to certify an issue to the administrator for a final determination that would then be under 877. So you believe that would be reviewable if that either the administrator made a decision on intervention or simply declined to take an interlocutory appeal at that point? Yes, it would be appealable. Yes. And that is what is, is often done. If there is a suspension and immediate suspension, then if they appeal that and the administrator denies it, then they come to this court or to another circuit court under 877. And we do not challenge the jurisdiction in those situations. But they did not do that. They did not do that in the motion to intervene. They did not do that in the, in their motion to have an emergency stay of the administrative hearing. So the first issue is no jurisdiction. The second issue is that what they are asking for the relief that they are requesting is no longer available. It is now moved. The administrative hearing was conducted before the administrative law judge. The ALJ completed receiving testimony on January 24th, 2023, and then issued her report and recommendation to the administrator findings of fact and conclusions of law that was on May 5th of 2023. But Ms. Gay isn't arguing that it's moot, a bit of an overreach. I mean, the administrator has yet to act and we've held in other circumstances that where an intervener is wrongly denied an opportunity to participate in administrative proceeding, that the court has the authority to remand for the agency to take account of the putative intervener's interests, reopen the record. And we could do that here as well, if there were merit to this claim. You're right, Judge Pillard. It would seem like at most what they could receive here would be an opportunity to supplement the record. But doesn't that render it not moot? That could render it not moot, but it would not render what they want to supplement with relevant. And the reason for that is in the order to show cause, there were five patients identified who were addressed by the expert who testified about how Dr. Bokhoff deviated from the standard of care in California, how he repeatedly prescribed prescriptions that were not legitimate under 1306.04. Initially, there were 11 interveners. We now have nine, but the nine patients do not overlap at all with the five patients who were at issue in the proceeding. And the DEA has held, and even other circuits have recognized, like in McKay versus DEA in the Tenth Circuit, they recognized that evidence of lawful prescribing is entitled to minimal weight, and that even a few acts, a couple of acts of improper prescribing are sufficient to support a revocation or a denial or a suspension of a registration. I don't question the second part of your statement, but is it really irrelevant what would happen to people who presumptively are legitimately being prescribed? For example, in Bonds versus Tandy, the Fifth Circuit talks about the Controlled Substances Act protecting the public's interest in the legitimate use of controlled substances and an interest in inhibiting the pernicious consequences to the public's health and safety of illegitimate use. So it's both. It's setting up a regime that is designed both to enable people to obtain lawful prescriptions from registered medical providers and to stem and punish where there's unlawful prescriptions. So to say that it's in some generic way not relevant what the fate is of lawful recipients of prescriptions seems to be not necessarily fully accounting for the interests of the CSA. Well, what the prior reports have said, and in fact, what the ALJ said in the report and recommendation, which petitioners attached to the joint appendix, she did acknowledge that lawful prescribing is entitled to minimal weight in evaluating the factor four of the 823 factors for whether the prescribing and lawful handling of controlled substances. So it is entitled to some weight, not saying that it's not, but the ALJ properly determined that in this instance, it would have been extensive, it would have been repetitive, and yes, there could be evidence of it, but it would not be the focus because it doesn't address the factors of, it doesn't refute the evidence of the unlawful prescribing to the five patients outlined in the order to show cause, and they could have been called as witnesses. I mean, that would be the method to present the testimony of the lawful prescribing. Dr. Bokoff chose not to present any testimony. He did not call an expert witness to counter the witness presented by the government. He did not testify to acknowledge his wrongdoing, to express that he knew what he had done wrong. He did stipulate that he had failed at record keeping because there were records, patient records in his garage, in the storage unit, there were patient records scattered throughout his office. So the putative intervenor's statements were introduced in the case that Dr. Bokoff filed in California to try to restrain the suspension of his administrative record in this case. Well, yes, Your Honor, in the Central District of California, six weeks after the immediate suspension order, an order to show cause was served on Dr. Bokoff, he sought a TRO in the Central District of California, and he attached the 11 statements of the patients. Those were given to the administrative law judge, whether they are, so they should be in the record when it is certified by the administrator, when there is a final order. So they were given, meaning they were filed or proffered? Yes. And yeah, so two, I mean, I think I merged two and three with the, with the saying that, that it's now moved, but also getting to some of the merits of that the ALJ also, in addition to issuing an interlocutory order, but if the court does determine that a final order was issued, the issue did not, you know, the decision denying their motion to intervene was properly made because they are not, their legal interests do not align with that of Dr. Bokoff. It seems to me that the best case on standing for these petitioners is, is versus DEA, and I know it wasn't cited in, in the briefing, but we held there that a wholesale importer of a controlled substance had standing to challenge a DEA order that, as to which it was not a party, that the order was restraining the importation that the sending in by foreign manufacturers to, to a, you know, PDK, which was a wholesaler of imported controlled substances. And I guess the question is, how would you distinguish that situation from this one? And I don't want to surprise you if it's not a case that you're aware of. There is a case, which I believe Judge Henderson was involved in that opinion. And then in those instances, there are certain provisions in the CFR, in the, in the regs implementing the Controlled Substances Act statutes. And in there, there are specific provisions that do allow for intervention. Just like in the nuclear regulatory case that is cited by my friend, there was a specific provision for intervention and what happened in PDK and in PENIC, if there is, if you are an importer of a controlled substance, and I think in PENIC, it was for raw materials to create controlled substances. And so under the CFR, it specifically states, if someone applies for a registration to be an importer, then notice is given, notice is published in the federal register and notice is sent to everyone who has a similar registration. And that's what happened in PDK and in PENIC is then those parties came in and objected to the, to the new person. As I think in PENIC, there were two registrants who were able to bring in raw materials and a third applied and they objected to that and they had a hearing to express why it was not, why the third company should not have it. So those are specific provisions that, that do allow for, for intervention. And that is how it's written in the code. There is no comparable position here. And if you think about it, it would be so unwieldy. And the ALJ did note it, note this, saying that Dr. Bokhoff, who did not want the interveners to intervene, Dr. Bokhoff has a right to protect his due process interest in his license, in his certificate of registration to prescribe controlled substances. They do not have a due process right in this proceeding, but Dr. Bokhoff did not want them. The ALJ noted that it would extend the proceeding. It would not provide the efficient review that he is entitled to, that the public is entitled to. But let's take it to its logical extreme. I mean, there are 2 million registrants in the US. Over half of those are practitioners, doctors, nurse practitioners. The other ones are pharmacies, distributors, manufacturers. So under my friend's theory, if there is a rule to show cause against  would be able to come in and participate in the hearing, a physician, a practitioner, every patient would be permitted to come in. That is not what is contemplated by the Controlled Substances Act. It is, it is set up to create the closed system so that there can be oversight and management to make sure that there is not diversion and abuse of controlled substances and allowing, opening the doors to have anyone become involved. It would make the process untenable. It is also, I know there are several references in the brief to a star chamber or Orwellian conduct, and I confirmed with the DEA that the hearings are public, the pre-hearing, pre-trial hearing is not, but that's akin to a pre-trial discussion in chambers. It's not on the record. It's about scheduling, filing, but the actual hearing, especially now that post-COVID, they are, okay. I see I'm over my time and I rest on my brief and respectfully request that you deny the petition. Thank you. You have one minute. Mr. Flattery, you have one minute. Right. Try to restrain my Irish equatiousness. My friend has accepted the principle that there can be collateral damage on behalf of efficiency throughout the system. I would point out that in this case, we have found and cited reasons why these proceedings were defective. And Dr. Bacoff's counsel said he wouldn't even talk to us. Section 13, 16.62 provides that rulings of the presiding officer may not be appealed to the administrator without the approval of the presiding officer below. So that is not going to be a remedy. As for it being moot, it is not moot because 5 USC section 706.1 provides us a remedy that one can remand the matter to be corrected. There's this question about not legitimate as if we should take the findings of this questionable secret proceeding and give it the benefit of the doubt, notwithstanding the fact that the doctor who was their only expert on this matter is found to be entirely unreliable, so much so that there was a mistrial in Ohio federal court over this very issue. The, uh, uh, say I got 14 seconds. The, um, the final thing I would say, your honor, is that Dr. Bacoff is a doctor who heals. He does not deal. And that we are, by upholding the practice of this ALG, we are sanctioning the disregard of patients who suffer. I mean, really physically suffer because of these proceedings that hide in the shadows and do what they may. They can write a single sentence instead of the opinion that was written, but the opinion that was written, that we managed to look at contradicts what they told us. When they, Mr. Flannery, finish your sentence. I have, uh, thank you for your time. I appreciate it. And my clients too.
judges: Henderson, Pillard, Rao